IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No._____

GROWTH HARMONY DE, LLC, a
Delaware limited liability company,

    Plaintiff,
v.

MEGA LANGUAGE LTD., an Israeli
limited company, and OPHER BRAYER,
an individual,

    Defendants.
_____/

**COMPLAINT**

Plaintiff, GROWTH HARMONY DE, LLC ("*Plaintiff*"), a Delaware limited liability company, by and through its undersigned counsel, Duane Morris LLP, brings suit against Defendants, MEGA LANGUAGE LTD. ("*Mega Language*") and OPHER BRAYER ("*Brayer*") (collectively, "*Defendants*"), for damages, and in support alleges as follows:

**NATURE OF THE CASE**

1. This is a civil action for damages arising from Mega Language's breach of a License Agreement (defined below) dated April 27, 2020 and Brayer's tortious interference with Plaintiff's business relationships.

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff is a Delaware limited liability company with its principal place of business located at 2637 E. Atlantic Boulevard, # 41855, Pompano Beach, Florida 33062. Plaintiff is, at the time of the filing of this Complaint, a citizen of Florida, California, Colorado, Utah, Tennessee,

Maryland, North Carolina, Nevada, Pennsylvania, Indiana, Colombia, Panama, and Portugal by virtue of the following. Plaintiff's members Mark Hirsch and Spencer Whiting are individuals and are citizens of Florida. Plaintiff's member Jeff Siegel is an individual and is a citizen of Utah. Plaintiff's members James Regan and Julian Awad are individuals and are citizens of Pennsylvania. Plaintiff's member MJEP, LP is a limited partnership organized under the laws of Pennsylvania. MJEP's sole limited partner is The Daniel Morris Roitman Irrevocable Trust. The Daniel Morris Roitman Irrevocable Trust is a traditional trust organized under the laws of Pennsylvania with three trustees, Laura Carolina Quintana, Ajay Segal, and Arik Ben Ari, all of whom are individuals and citizens of Colombia, Maryland, and Pennsylvania, respectively. MJEP's sole general partner is Octavius Consulting, Inc., which is a corporation organized under the laws of Pennsylvania with its principal place of business located in Philadelphia, Pennsylvania. Plaintiff's member Allen Baler is an individual and is a citizen of Tennessee. Plaintiff's member Jeffrey Malcom is an individual and is a citizen of Maryland. Plaintiff's member Charles Livingston is an individual and is a citizen of Indiana. Plaintiff's member Happy Conversations, Inc. is a corporation organized under laws of Nevada with its principal place of business located in Las Vegas, Nevada. Plaintiff's member Irollie Marketing, LLC is a Utah limited liability company. Irollie Marketing, LLC's sole member, Mike Geary, is an individual and is a citizen of Utah. Plaintiff's member Investor DNA, LLC is a Utah limited liability company. Investor DNA, LLC's sole member, Garrett Gunderson, is an individual and is a citizen of Utah. Plaintiff's member Baby Bathwater Institute, LLC is Colorado limited liability company. Baby Bathwater Institute, LLC's two members, Michael Lovitch and Hollis Carter, are individuals and are citizens of Colorado and Utah, respectively. Plaintiff's member Brad Howard is an individual and is a citizen of North Carolina. Plaintiff's member Deutsch & Associates, Inc. is a corporation

organized under the laws of North Carolina with its principal place of business located in Chapel Hill, North Carolina.  Plaintiff's member Jason Akatiff is an individual and is a citizen of California.  Plaintiff's member Matt Gallant is an individual and is a citizen of Panama.  Plaintiff's member Harry Idahossa Ness is an individual and is a citizen of Portugal.  No members of Plaintiff are citizens or residents of Israel.  Plaintiff is in the business of marketing, distributing, and selling educational products and services that benefit parents and children.

3. Defendant Mega Language is a limited corporation organized under the laws of Israel with its principal place of business located at 23 Hannah Senesh Street, Apt. 15, Hertzliya, Israel 4644655.  Defendant is the exclusive licensor and owner of certain online educational programming, including video instruction, currently marketed under the brand names "Games of Genius" and/or "MindFinity".

4. Defendant Brayer is over eighteen (18) years of age and is a resident of Hertzliya, Israel, and is otherwise *sui juris*.  Defendant Brayer is not a citizen of the United States.  Defendant Brayer is the owner-operator of Defendant Mega Language and regularly performs business on its behalf.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the parties are completely the diverse and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and pursuant to paragraph 12.3 of the License Agreement (defined below).

6. This Court has jurisdiction over the Defendants pursuant to Fla. Stat. § 48.193(1)(a) as Defendant Mega Language breached a contract in this state by failing to perform acts required by the contract to be performed in this state and Defendant Brayer committed tortious acts within this state.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this action occurred in this District, Defendants are not residents of the United States, and pursuant to paragraph 12.3 of the License Agreement (defined below).

## GENERAL ALLEGATIONS

### Relationship of the Parties

8. On or about April 27, 2020 Plaintiff and Defendant Mega Language entered into a written contractual agreement ("*License Agreement*") for the purpose of developing, marketing, distributing, selling Defendant Mega Language's educational products and services for the benefit of parents and children, and providing subscriber support. A true and correct copy of the License Agreement is attached hereto as **Exhibit A**.

9. The License Agreement granted Plaintiff, among other things, a geographically exclusive, non-transferable, non sublicensable, royalty-bearing license to make, use, offer to sell and commercialize Defendant Mega Language's products in North, Central, and South America.

10. Plaintiff's license was to continue for an initial term of five (5) years and renew for additional consecutive ten (10) year terms thereafter.

11. Per the terms of the License Agreement, Plaintiff was obligated to, among other things, "build and maintain" Defendant Mega Language's product in North, Central, and South America and to present the same with "commercially reasonable professional standards in the industry" and "be responsible for any and all online delivery and support of end user customers in a manner that will preserve the good will and reputation of" Defendant Mega Language's product.

12. In addition, as consideration for the granting of its license, Plaintiff was to pay to Defendant Mega Language royalties at the times and rates set forth in the License Agreement.

13. The License Agreement obligated Defendant Mega Language to, among other things, provide product content to Plaintiff, provide support to Plaintiff, provide support for its SCT Program, comply with the mutual non-disparagement provisions, and not infringe on Plaintiff's exclusive rights to market, sell, and distribute Defendant Mega Language's products in North, Central, and South America.

14. While Plaintiff complied with all of its obligations under the License Agreement, as described below the same cannot be said for Defendant Mega Language.

## Breach of the License Agreement

15. Paragraph 3.2.1 of the License Agreement required Defendant Mega Language to deliver product content to Plaintiff as follows:

> **3.2.1. Product Content.** In consideration for the compensation set forth herein to be paid to the Licensee to the Licensor on a timely manner, the Licensor shall provide the Licensee with the full Original Product[1] and certain support as set forth below.

16. Instead of complying with this obligation, Defendant Mega Language stopped providing Plaintiff with monthly product content in January 2021.

17. Similarly, Paragraph 3.2.3 of the License Agreement expressly imposed the following product support obligations on Defendant Mega Language:

> **3.2.3. Licensor Support Obligations**. Licensor shall be available for the initial six (6) months following the Effective Date hereof for up to 10 hours per week and for a period of additional 18 months following the Effective Date for up to 5 hours per week for customer service and product support such as but limited to live online

---

[1] The License Agreement defines the term "Original Product" as follows: "(a) the course of the Licensor for level 1 and level 2 of stage 1, presently marketed under the brand name Games of Genius or MindFinity, and any portion thereof which includes daily lessons #1 - #520 (the most updated version thereof, each of 1 sheet plus video) and on a monthly basis – 22 lessons plus existing workshop videos with respect to the foregoing (the "**Original Product**") . . . ." *See* **Exhibit A**, at ¶1 (emphasis in original).

> Q&A, PR activities and interviews, video shoots requested by Licensee, marketing support and supplementations to lessons ("**Licensor Services**").
>
> In addition to the foregoing, additional Licensor Services shall include Licensor providing five social media posts to customers of the Products on a weekly basis which may be used by Licensee for the Territory and will be posted by Licensor to Licensee's private groups of customers or public prospect groups of the Products in the Field in the Territory – such service shall be at no cost during the initial 24 months of this Agreement. Services shall be provided by Opher Brayer unless otherwise agreed to by Licensee.
>
> . . . Licensor agrees that, during marketing promotion or customer engagement assignments, it shall make a best effort to promote Licensee's Product and URL and to not create confusion in the market. . . .

See **Exhibit A**, at ¶3.2.3.

18.     Rather than comply with its obligation under paragraph 3.2.3 of the License Agreement, Defendant Mega Language, including its principal, Defendant Brayer, blatantly refused to provide the required product support and attempted to place extra-contractual conditions precedent on its compliance with the terms of the License Agreement.

19.     Defendant Brayer's personal participation was essential to the product support Defendant Mega Language was obligated, but failed, to provide Plaintiff under paragraph 3.2.3 of the License Agreement.

20.     Likewise, paragraph 5.1.4.5 of the License Agreement, states the following, in pertinent part:

> **5.1.4.5   SCT Program**[2].  . . . Licensor shall grant Licensee access to SCTs and support in good faith Licensee's efforts to assist SCTs in the marketing of the OCP.

---

[2] The License Agreement defines the SCT Program as follows: "**SCT Program**" will mean the Licensor's offline business of selling certifications to martial arts trainers or spawned from business owners in that market ("**SCTs**") with respect to the Product in North, Central, and South America. The requirements for certification of a master certified trainer shall be provided by Licensor within 90 days following the Effective Date hereof. SCT Program must require SCTs to offer students the Online Companion Product ("**OCP**"). Licensor shall ensure a best effort in generating sales for OCP. Licensee shall support SCTs in OCP sales, as is commercially reasonable. See **Exhibit A**, at ¶1.

> Licensee may at its discretion provide marketing support to SCTs. Licensor shall be solely responsible for any SCT Program product support and online content at Licensor's expense (i.e. certification-related). Licensee may market the SCT program within the territory on a non-exclusive basis.

*See id.* at ¶5.1.4.5.

21. Defendant Mega Language breached its obligations set forth in paragraph 5.1.4.5 of the License Agreement by failing to provide SCTs with the requisite support. In doing so, Defendant Mega Language has not acted in good faith and has undermined Plaintiff's business efforts with SCTs.

22. Additionally, paragraph 12.14 of the License Agreement, imposes a mutual non-disparagement requirement on Plaintiff and Defendant Mega Language, and states as follows:

> **12.14. Mutual Non-Disparagement Clause.** Neither Party shall make any oral or written statement about the other Party which is intended or reasonably likely to disparage the other Party, or otherwise degrade the other Party's reputation in the business community, whether in Israel, the United States or elsewhere.

*See id.* at ¶12.14.

23. Defendant Mega Language has breached paragraph 12.14 of the License Agreement by sending correspondence that contains disparaging statements about Plaintiff and including SCTs on said correspondence, and making disparaging statements to certain individuals doing business with Plaintiff.

24. As a direct and proximate result of Defendant Mega Language's disparaging statements, Plaintiff has been damaged in its ability to do business with the SCTs.

25. Defendant Mega Language has also breached paragraph 3.1 of the License Agreement by infringing upon the exclusive rights granted to Plaintiff to market, sell, and distribute Defendant Mega Language's products in North, Central, and South America, through

Defendant Mega Language's promotion of another online educational product called "Dojo Genius", which allows SCTs to give online classes that include images and instructions from lessons that have been exclusively licensed to Plaintiff.

**Defendant Mega Language's Unlawful Termination of the License Agreement**

26. On or about October 16, 2020, Plaintiff provided Defendant Mega Language written notice of breach and an opportunity to cure to no avail.

27. Despite Defendant Mega Language's numerous breaches of the License Agreement and its failure to cure the same, Defendant Mega Language notified Plaintiff of its intention to terminate the License Agreement with immediate effect on December 21, 2020.

28. Defendant Mega Language's preemptive attempt to terminate the License Agreement ostensibly rests on the erroneous premise that Plaintiff "repudiated" its obligation to pay Defendant Mega Language a $3,000 licensor services fee.

29. However, no such "repudiation" occurred by Plaintiff and Plaintiff has complied with the terms of the License Agreement in all respects, including payment of the $3,000 licensor services fee to Defendant Mega Language despite Defendant Mega Language's stated refusal to provide said services.

30. Defendant Mega Language has no basis upon which to terminate the License Agreement.

31. As such, Defendant Mega Language's attempted termination of the License Agreement while standing in breach of the same is unlawful and actionable.

**Defendant Mega Language's Failure to Provide Product Content**

32. In January 2021, Defendant Mega Language appeared to send Plaintiff the required monthly product content through electronic means; however, Defendant Mega Language deleted

the content of the electronic files for the January 2021 product content before Plaintiff could download the same.

33. Thereafter, for the months of February and March 2021, Defendant Mega Language filed to provide Plaintiff with any product content as required by the License Agreement.

34. Defendant Mega Language has no basis upon which to refuse to provide Plaintiff with product content on a monthly basis.

35. Defendant Mega Language's failure to provide Plaintiff with product content as required by the License Agreement is unlawful and is actionable.

**Defendant Brayer's Interference with Plaintiff's Business Relationships with the SCTs**

36. Defendant Brayer, for his part, not only improperly sought to terminate the License Agreement through his company, Defendant Mega Language, but Defendant Brayer personally and intentionally sought to interfere with the advantageous business relationships Plaintiff enjoyed with the SCTs.

37. Defendant Brayer, acting in his individual capacity, had private conversations with certain SCTs wherein he made disparaging remarks about Plaintiff with the intent that said SCTs would withdraw or terminate their business relationships with Plaintiff.

38. Defendant Brayer's repeated disparagement of Plaintiff to the SCTs also caused confusion in the marketplace such that SCTs opted to withdraw or terminate their business relationships with Plaintiff.

39. Defendant Brayer has no justification whatsoever for interfering with Plaintiff's advantageous business relationships with the SCTs.

40. Defendant Brayer's behavior is not only egregious, but is also actionable.

41. Plaintiff has complied with all conditions precedent and is entitled to initiate, maintain, and prosecute this litigation or such conditions precedent have occurred or have been waived or otherwise excused.

## COUNT I
## (BREACH OF CONTRACT)
### Against Defendant Mega Language

42. Plaintiff adopts, re-alleges, and incorporates the allegations contained in paragraphs 1 through 41 as though they are fully set forth herein.

43. This is an action for breach of contract under Florida law.

44. At all material times hereto, there existed a valid contract (*i.e.*, the License Agreement) between Plaintiff, on the one hand, and Defendant Mega Language on the other hand. The terms of the License Agreement dated April 27, 2020 are incorporated herein by reference. *See* **Exhibit A**.

45. The License Agreement is supported by consideration, as acknowledged by the parties thereto.

46. The License Agreement expressly obligated Defendant Mega Language to, among other things, provide product content to Plaintiff, provide support to Plaintiff, provide support for its SCT Program, comply with the mutual non-disparagement provisions, and not infringe on Plaintiff's exclusive rights in North, Central, and South America. *See id.* at ¶¶3.1; 3.2.1; 3.2.3; 5.1.4.5; and 12.14.

47. Defendant Mega Language materially breached its obligations under the terms of the License Agreement by, among other things:

a) infringing upon Plaintiff's exclusive rights to market, sell, and distribute Defendant Mega Language's products in North, Central, and South America as granted by paragraph 3.1 of the License Agreement;

b) failing to provide Plaintiff with product content in a timely manner as required by paragraph 3.2.1 of the License Agreement;

c) refusing to provide necessary product support to Plaintiff as required by paragraph 3.2.3 of the License Agreement;

d) refusing to provide the required support for its SCT Program as required by paragraph 5.1.4.5 of the License Agreement;

e) refusing to comply with the mutual non-disparagement provision set forth in paragraph 12.14 of the License Agreement by making disparaging statements about Plaintiff to SCTs and other individuals with whom Plaintiff does business; and

f) in other such particulars as the evidence may show.

48. As a direct and proximate result of Defendant Mega Language's breach of the express terms of the License Agreement, Plaintiff has suffered and will continue to suffer damages, to which it is entitled to recover.

WHEREFORE, Plaintiff respectfully requests the Court enter a judgment in its favor and against Defendant Mega Language: (i) finding Mega Language in breach of License Agreement; (ii) granting compensatory damages to Plaintiff and against Mega Language, plus pre- and post-judgment interest at the applicable statutory rate, reasonable attorneys' fees, and costs and expenses to the extent permissible by applicable law; and (iii) granting any such further relief as the Court deems necessary and just.

## COUNT II
## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)
### Against Defendant Mega Language

49. Plaintiff adopts, re-alleges, and incorporates the allegations contained in paragraphs 1 through 41 as though they are fully set forth herein.

50. This is an action for breach of the implied covenant of good faith and fair dealing under Florida law.

51. Implied into the License Agreement was and is a covenant of good faith and fair dealing whereby neither party would act in bad faith or deal unfairly so as to deprive the other party of the benefits of the License Agreement.

52. Plaintiff has performed all the promises, covenants, and conditions required on its part under the License Agreement.

53. By engaging in the unfair and bad faith conduct as alleged herein, Defendant Mega Language has breached the covenant of good faith and fair dealing implied in the License Agreement.

54. As a direct and proximate result of Defendant Mega Language's breach of the implied covenant of good faith and fair dealing, Plaintiff has already suffered damages and irreparable injury.

55. Unless Defendant Mega Language is enjoined from continuing to breach the implied covenant of good faith and fair dealing, Plaintiff will suffer further immediate, irreparable injury.

56. Plaintiff lacks an adequate remedy at law to prevent Defendant Mega Language from continuing to breach the implied covenant of good faith and fair dealing.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

WHEREFORE, the Plaintiff respectfully requests the Court enter a judgment in its favor and against Defendant Brayer: (i) granting preliminary and permanent injunctive relief enjoining Defendant Brayer from breaching the implied covenant of good faith and fair dealing with respect to the License Agreement; (ii) granting compensatory damages to the Plaintiff and against Defendant Brayer, plus pre- and post-judgment interest at the applicable statutory rate; and (iii) granting any such further relief as the Court deems necessary and just.

### COUNT III
### (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS - INJUNCTION)
### Against Defendant Brayer

57. Plaintiff adopts, re-alleges, and incorporates the allegations contained in paragraphs 1 through 41 as though they are fully set forth herein.

58. This is an action for tortious interference with advantageous business relationships under Florida law.

59. At all times relevant hereto, Plaintiff enjoyed advantageous business relationships with the SCTs.

60. Defendant Brayer was aware and had knowledge of Plaintiff's business relationships with said SCTs.

61. Defendant Brayer, in his individual capacity, intentionally and unjustifiably interfered with and/or disrupted Plaintiff's business relationships with the SCTs, by, among other things, creating confusion in the marketplace and making disparaging remarks about Plaintiff to said SCTs.

62. Defendant Brayer's behavior in this regard caused Carmen Choi and Jose DiCervo, all of whom were active SCTs, to terminate or cease their business relationships with Plaintiff.

63. The aforementioned SCTs would not have terminated their business relationships with Plaintiff, but for Defendant Brayer's intentional interference.

64. As a direct and proximate result of Defendant Brayer's actions, Plaintiff has suffered and will continue to suffer irreparable injury.

65. Unless Defendant Brayer is enjoined from continuing to tortiously interfere with Plaintiff's business relationship with the SCTs, Plaintiff will suffer further immediate, irreparable injury.

66. Plaintiff lacks an adequate remedy at law to prevent Defendant Brayer from continuing to tortiously interfere with Plaintiff's business relationships.

67. Plaintiff has a substantial likelihood of success on the merits of its claim, and injunctive relief would serve the public interest.

WHEREFORE, the Plaintiff respectfully requests the Court enter a judgment in its favor and against Defendant Brayer: (i) granting preliminary and permanent injunctive relief enjoining Defendant Brayer from tortiously interfering with Plaintiff business relationships with the SCTs; and (ii) granting any such further relief as the Court deems necessary and just.

## COUNT IV
**(TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS - DAMAGES)**
**Against Defendant Brayer**

68. Plaintiff adopts, re-alleges, and incorporates the allegations contained in paragraphs 1 through 41 as though they are fully set forth herein.

69. This is an action for tortious interference with advantageous business relationships under Florida law.

70. At all times relevant hereto, Plaintiff enjoyed advantageous business relationships with the SCTs.

71. Defendant Brayer was aware and had knowledge of Plaintiff's business relationships with said SCTs.

72. Defendant Brayer, in his individual capacity, intentionally and unjustifiably interfered with and/or disrupted Plaintiff's business relationships with the SCTs, by, among other things, creating confusion in the marketplace and making disparaging remarks about Plaintiff to said SCTs.

73. Defendant Brayer's behavior in this regard caused Carmen Choi and Jose DiCervo, all of whom were active SCTs, to terminate or cease their business relationships with Plaintiff.

74. The aforementioned SCTs would not have terminated their business relationships with Plaintiff, but for Defendant Brayer's intentional interference.

75. As a direct and proximate result of Defendant Brayer's actions, Plaintiff has suffered and will continue to suffer damages, to which it is entitled to recover, including but not limited to, loss of business and good will.

76. As a result of Defendant Brayer's willful and damaging conduct perpetrated against Plaintiff, Plaintiff reserves the right to seek imposition of exemplary damages against Defendant Brayer.

WHEREFORE, the Plaintiff respectfully requests the Court enter a judgment in its favor and against Defendant Brayer: (i) granting compensatory damages to the Plaintiff and against Defendant Brayer, plus pre- and post-judgment interest at the applicable statutory rate; and (ii) granting any such further relief as the Court deems necessary and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

| | |
|---|---|
| Dated this 17th day of March, 2021 | */s/ Harvey W. Gurland, Jr.* <br> Harvey W. Gurland, Jr. <br> Florida Bar No. 284033 <br> Julian Jackson-Fannin, Esq. <br> Florida Bar No. 93220 <br> 201 South Biscayne Boulevard <br> Suite 3400 <br> Miami, FL 33131-2318 <br> Telephone: 305.960.2214 <br> HWGurland@duanemorris.com <br> jjfannin@duanemorris.com <br> pnmendoza@duanemorris.com <br> yarnavat-parga@duanemorris.com <br><br> *Counsel for Plaintiff,* <br> *Growth Harmony DE, LLC* |

DM1\11880031.2